DUCKER, JUDGE:
Claimant, Irene Lomas, owned an approximately ten acre tract of land on Route 50 between Clarksburg and Salem in Harrison County, West Virginia, which was under lease as a furniture store to Elza V. Wilson at a rental of $800 per month, expiring September 30, 1969. The property was a store building 150 x 72 feet with large parking and unloading areas together with a trailer home. Lessor and lessee had orally agreed on renewal of the lease at a rental of $1,000 per *110 month, but the renewal plan was cancelled when the lessee, Elza V. Wilson, learned of the intention of the Department of Highways to institute condemnation proceedings to acquire the property for road purposes. The respondent paid Wilson an undisclosed amount as assistance in his moving expenses and to his son $125.00 in regard to his trailer but negotiations between the claimant and respondent as to compensation failed, and about May, 1971, respondent obtained a right of entry and took possession of claimant’s property.
The Commissioners in the condemnation suit made an award in an amount which is not disclosed in the record here, but which was satisfactory to the condemnee but not satisfactory to the respondent, which award has been appealed by the respondent. Other than the fact that the matter has been so appealed the record does not show what, if any, further proceedings have been had in the condemnation suit. Nor is this Court advised as to what has been or what will be the Court’s instructions and decision of the question of the time of the “taking” of the property and other pertinent factors. In this Court the claimant alleges damages in the sum of $14,000.00 which are based upon loss of rental at $1,000.00 per month for the fourteen month period beginning October 1, 1969.
The evidence shows that the lessee, Wilson, upon hearing that the respondent was contemplating taking the Lomas property, inquired of the respondent as to such matter, and was advised by letter from the respondent dated March 17, 1969, that “a field review” was scheduled to be held within the sixty days by the respondent and Federal personnel to finalize plans, and that in the event there are no major changes in location it appeared that appraisals and negotiations for the property should be in progress in the last quarter of 1969. Shortly thereafter respondent advised Wilson that the Federal Bureau of Roads had not approved the plans. As a consequence of receipt of this information, lessee did not renew his lease, had a furniture sale in June, 1969, and moved his business in October, 1969. Claimant testified that she was unable to lease her property thereafter.
The record shows that there were negotiations in June, July and August, 1969, between respondent and claimant for the acquisition of the property and that there were “constant negotiations more or less between the time they started and the filing of the condemnation”, but the parties could not agree on the price, and the condemnation suit followed.
*111 Counsel for the parties here have filed excellent briefs in support of their positions, counsel for the claimant contending that a “taking” of claimant’s property occurred approximately fourteen months before the order of entry was entered in the condemnation proceeding as there was a “de facto” taking at that time, and the respondent contending that the State was not liable until the order of entry was made because the condemnee had full title and use of the property until the State had the right to enter upon the property. The weight of authority largely supports the position of the respondent as set forth in the annotation in 37 American Law Reports 3d, at page 127, but we will not attempt here to repeat the citations of authorities therein contained, but that annotation shows respectable authority in support of the claimant’s position. While the cases cited are in most instances distinguishable, there is much equity in the position that when a condemnee has been damaged, he should be compensated when there has been unreasonable delay in the institution of condemnation proceedings. Most of these cases are those where the property has been the subject of deterioration and the neighborhood rendered undesirable and its property therein less valuable, and because of the knowledge of expected condemnation resulting in such loss the courts have construed such facts as constituting a “de facto” taking and considered the value as of the date of the “de facto” taking. Such a question is, in our opinion, one for judicial determination in condemnation proceedings as to whether incidental damages of loss of rent and the like are to be either eliminated or accounted for in the amount of the award.
As has been hereinbefore indicated, the record here does not disclose the full information as to the condemnation suit pending or concluded as to this property, and consequently this Court does not know the decision made or anticipated in that suit. It could be possible that if there is a final appellate court determination that claimant’s claim can be determined at common law, independent of condemnation procedure, to which common law remedy the constitutional immunity would apply, then this court could have jurisdiction. Under the present status of the case, we must first leave the decision to the court in which the condemnation proceeding is pending.
For the reasons stated, we are of the opinion to and do disallow this claim at this time, but inasmuch as this court is not advised as to the status of or of any final decision in regard to the relief sought *112 in the condemnation proceedings pertaining to this property, this case will remain on the docket of this Court for further consideration if proper, and to avoid the application of the statute of limitations thereto.
Claim disallowed.